1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

PRECISION TOXICOLOGY, LLC,

Plaintiff,

v.

LAURA MACRORY,

Defendant.

LAURA MACRORY,

Counter-Complainant,

vs.

PRECISION TOXICOLOGY, LLC, et al.,

Counter-Defendants.

Case No. 20-cv-2101-MMA (KSC)

**ORDER GRANTING IN PART AND DENYING IN PART COUNTER-DEFENDANTS' MOTION TO DISMISS**

[Doc. No. 17]

On October 26, 2020, Plaintiff Precision Toxicology, LLC ("Precision") initiated this action against Laura MacRory ("MacRory"), alleging violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, as well as various state law causes of action. *See* Doc. No. 1. In response, MacRory filed a Counter Complaint against Precision and Nick Simoni ("Simoni") (collectively, "Counter-Defendants"). *See* Doc. No. 7. Counter-Defendants filed a motion to dismiss the counterclaims, *see* Doc. No. 9, prompting MacRory to file a First Amended Counter Complaint, *see* Doc. No. 10

-1-

("FACC"). Counter-Defendants now move to dismiss the twelve counterclaims in the FACC. MacRory filed an opposition, to which Counter-Defendants replied. *See* Doc. Nos. 22, 23. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. *See* Doc. No. 24. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Counter-Defendants' motion to dismiss.

# I. BACKGROUND

On July 31, 2017, Precision hired MacRory as a Territory Manager for the Houston, Texas area. *See* FACC at ¶ 18. MacRory's position was part-time and not to exceed 24 hours per week at $15 per hour. *See id.* at ¶ 19. MacRory claims, however, that Precision actually required her to work about 60 hours each week and did not pay her for the extra 36 hours. *See id.* at ¶ 20. She further asserts that when she discussed this with her supervisor, Simoni, he advised her not to tell anyone, "as it was illegal." *Id.* at ¶ 21. Between July 2017 and April 2018, MacRory claims to have accrued approximately 1,152 unpaid overtime hours—or $17,280. *See id.* at ¶ 22.

In April 2018, MacRory was promoted to a full-time, salaried employee. *See id.* at ¶ 25. Precision further promoted MacRory to Senior Territory Manager in October 2019. *See id.* at ¶ 26.

MacRory claims that her problems at Precision persisted after her promotions. For example, MacRory asserts that Precision shorted her on her commission. She states that several times, Precision would take 2% off of her guaranteed 8%. *See id.* at ¶ 29. MacRory also alleges that Precision hired three new employees to "keep an eye on" her. *Id.* at ¶ 31. Further, MacRory claims she was promised a bonus in 2018, specifically for "Care Evolve Conversions." *Id.* at ¶ 27. According to MacRory, she never received the promised bonus. *See id.*

MacRory asserts she resigned, in part, because of Precision's treatment of her "Techs." *Id.* at ¶ 41. She alleges that Precision Techs were "underappreciated" and, after the COVID-19 outbreak, Precision drastically cut many Techs' hours. *Id.* at ¶¶ 37, 41.

MacRory further explains that her resignation was also due in part to the COVID-19 pandemic.  As a result of the outbreak, Precision closed its San Diego facility, but did not provide MacRory—who was living and working in Texas—the option of working remotely.  *See id.* at ¶ 43.  Due to MacRory's autoimmune disorder, she was "constantly in fear" of COVID-19, as she was often visiting hospitals in Houston, a "Code Red COVID Category" location.  *See id.* at ¶ 43.  As a result, on October 2, 2020, MacRory emailed Simoni her resignation letter.  *See id.* at ¶ 44.

After MacRory resigned, some of Precision's employees and clients also left.  *See id.* at ¶¶ 48-49.  Believing that MacRory unlawfully solicited Precision employees and clients, Precision initiated this action against her.  *See* Doc. No. 1.  MacRory brings the following counterclaims: (1) failure to pay minimum wage, 29 U.S.C. § 206 and Tex. Lab. Code § 62.001 *et seq.*; (2) failure to pay overtime, 29 U.S.C. § 207; (3) "violation of meal and rest period"; (4) failure to furnish wage statements, Tex. Lab. Code § 62.003; (5–6) breach of the implied covenant of good faith and fair dealing; (7) hostile work environment, Tex. Lab. Code § 21 *et seq.*; (8) constructive termination, Tex. Lab. Code § 21.051; (9) unsafe work conditions, Tex. Lab. Code § 451.001; (10) retaliation, 29 U.S.C. § 215(a)(3) and Tex. Lab. Code § 21.005; (11) unjust enrichment; and (12) undue influence.  *See* FACC.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the claims made in a complaint.  *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face."  Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  Instead, the complaint "must contain allegations of

-3-

underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

In determining the propriety of Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts. *See United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). "A court may, however, consider certain materials— documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.*; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).

### III. DISCUSSION

Counter-Defendants move to dismiss the FACC in its entirety—which includes twelve causes of action. The Court addresses each in turn.

**A.   Minimum Wage Violation**

MacRory's first cause of action is for Precision's alleged failure to pay her minimum wage. *See* FACC at 14. In support of her claim, she cites to both the Fair Labor Standards Act ("FLSA") and Texas law, specifically, the Texas Minimum Wage Act ("TMWA"). *See id.* at ¶¶ 55-56. Counter-Defendants argue that the TMWA does not apply because MacRory is covered by the FLSA. *See* Doc. No. 17-1 at 9. In

-4-

response, MacRory argues that while she may not recover under both, she is permitted to plead them as alternative theories.  *See* Doc. No. 22 at 8.

It is true that a party is entitled to assert alternative claims.  *See* Fed. R. Civ. P. 8(d).  However, the Court is not convinced that MacRory pleads this claim in the alternative.  To be sure, she asserts that "[t]he failure to pay Ms. MacRory minimum wage violates §206 of the FLSA *and* §62 of the TMWA."  FACC at ¶ 57 (emphasis added).  However, MacRory does not oppose Counter-Defendants' argument that the FLSA—and therefore not the TMWA—governs.  In response, she states that "[w]hile MacRory is not prohibited from pleading this cause of action alternatively under Texas Law, to save the Court's time and effort, we will only address the FLSA claim, with regards to minimum wage."  Doc. No. 22 at 9.  While this statement is not an outright concession, she does not dispute that the TMWA does not apply.  That said, the issue of whether MacRory is in fact covered by the FLSA is not yet before the Court.  Accordingly, MacRory's TMWA claim is not subject to dismissal on this basis.  While she cannot ultimately recover under both statutory schemes, MacRory may plead claims under the FLSA and Texas labor laws.

### 1.  FLSA Minimum Wage Claim

The Court first turns to MacRory's FLSA minimum wage claim.  Counter-Defendants argue that her claim is untimely.  *See* Doc. No. 17-1 at 9.  The statute of limitations for an FLSA claim is two years.  *See* 29 U.S.C. § 255(a).  According to Counter-Defendants, the alleged minimum wage violations ended when MacRory was promoted to a salaried employee—in April 2018.  *See* Doc. No. 17-1 at 10.  MacRory does not argue otherwise.  Instead, in opposition, MacRory argues that her claim is not untimely because Precision's actions were willful and thus subject to a three-year statute of limitations.  *See* Doc. No. 22 at 10.

MacRory is correct that the statute of limitations for willful FLSA violations is three years.  *See* 29 U.S.C. § 255(a).  An FLSA violation "is willful when 'the employer either knew or showed reckless disregard for . . . whether its conduct was prohibited by

the [FLSA.]'" *Scalia v. Emplr. Sols. Staffing Grp., Ltd. Liab. Co.*, 951 F.3d 1097, 1102 (9th Cir. 2020) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). According to MacRory, she complained that she was not being compensated for her additional hours—thus decreasing her hourly wage—to Simoni. *See* FACC at ¶ 21. She says "Simoni told her to keep it a secret because it was illegal for her to work overtime and not get paid for it." *Id.* at ¶ 21. This is a plausible assertion that Precision knew that it was not paying her minimum wage in compliance with the FLSA, and thus, that the alleged violation was willful. Accordingly, taking MacRory's allegations as true, her FLSA claims are subject to a three-year statute of limitations. Because her November 17, 2020 Counter Complaint is within three years from the claim's April 2018 accrual, her first cause of action is timely.

The Court next turns to the substance of MacRory's FLSA minimum wage claim. MacRory asserts that Precision violated the FLSA when it "did not pay [her] minimum wage when she worked 36 hours over her 24-hour per week limit (15x24 = 360/60 hours = 6 dollars per hour)." *Id.* at ¶ 56. So far as the Court can reasonably infer, MacRory claims that from July 2017 to April 2018, she worked 60 hours each week and Precision paid her $360. Thus, her hourly wage was $6. According to the Department of Labor, the federal minimum wage in 2017 and 2018 was $7.25. *See* 29 U.S.C. § 206(a)(1)(C). Accordingly, MacRory plausibly pleads that she was not paid minimum wage under the FLSA. Therefore, the Court **DENIES** Precision's motion to dismiss MacRory's FLSA minimum wage claim.

### 2.     TMWA Minimum Wage Claim

As previously explained, the Court will not yet determine whether MacRory is covered by the FMLA or the TMWA. In the event the TMWA applies, the Texas Labor Code provides that employers must pay employees at least the federal minimum wage set by the FLSA. *See* Tex. Lab. Code § 62.051. Pursuant to section 62.202, TMWA claims "must be brought not later than the second anniversary of the date on which the unpaid wages are due and payable." Tex. Lab. Code § 62.202. Unlike the FLSA, the Texas

Labor Code does not grant plaintiffs an additional year to bring a minimum wage claim if the violation is willful.

There appears to be no dispute that Precision's alleged failure to pay MacRory minimum wage ended when it stopped paying her an hourly wage.  MacRory became a salaried, full-time employee in April 2018.  *See* FACC at ¶ 25.  To be sure, by MacRory's own admission, Precision's alleged failure to adequately compensate her lasted "roughly 8 months until April 2018."  FACC at ¶ 20.  Therefore, MacRory had until April 2020 to bring a TMWA claim.  MacRory filed her initial Counter Complaint on November 17, 2020.  *See* Doc. No. 7.  This was some seven months after the limitations period imposed by Texas Labor Code § 62.202 expired.  Therefore, MacRory's TMWA claim is untimely.  Accordingly, the Court **GRANTS** Precision's motion and **DISMISSES** MacRory's TMWA minimum wage claim.

## B.    Overtime Pay Violation

Pursuant to her second cause of action, MacRory asserts that Precision failed to pay her overtime wages as the FLSA requires.  *See* FACC at ¶ 63.  Counter-Defendants argue that MacRory's overtime claim is subject to a two-year statute of limitations and is thus untimely.  *See* Doc. No. 17-1 at 10.  For the same reasons explained above, this cause of action is subject to a three-year statute of limitations because MacRory adequately asserts that Precision's alleged violation was willful.[1]  *See* FACC at ¶ 67.  Accordingly, MacRory's second cause of action under the FLSA is not time barred.

The FLSA requires employers to pay their employees one- and one-half times their regular wage for all time worked over forty hours in a workweek.  *See* 29 U.S.C. § 207(a)(1).  Therefore, "a plaintiff asserting a violation of the FLSA overtime provisions must allege that she worked more than forty hours in a given workweek without being

---

[1] MacRory's repeated citations to the Texas Civil Practice and Remedies Code's definition of "malice," *see, e.g.*, FACC at ¶ 67, are inappropriate and inapposite.

compensated for the hours worked in excess of forty during that week." *Landers v. Quality Communs., Inc.*, 771 F.3d 638, 645 (9th Cir. 2015).

In support of this cause of action, MacRory alleges that "requiring her to work in excess of the allowed 24 hours per week, and also in excess of 8 hours per day and in excess of 40 hours per week, without adequate compensation for the overtime work was the result of the actions regularly practiced by Counter-Defendants." FACC at ¶ 64. Elsewhere in the FACC, MacRory asserts that she accrued 1,152 unpaid overtime hours between July 2017 and April 2018, amounting to $17,280. *See id.* at ¶ 22. While MacRory approximates the total amount of overtime hours she worked, she fails to "allege facts showing that there was a given week in which he was entitled to but denied minimum wages or overtime wages." *Landers*, 771 F.3d at 645. As the Ninth Circuit explained, "[a]lthough plaintiffs in these types of cases cannot be expected to allege 'with mathematical precision,' the amount of overtime compensation owed by the employer, they should be able to allege facts demonstrating there was at least one workweek in which they worked in excess of forty hours and were not paid overtime wages." *Id.* at 646 (quoting *DeJesus v. HF Mgmt. Servs.*, 726 F.3d 85, 90 (2d Cir. 2013)).

MacRory's "allegations fail[] to provide sufficient detail about the length and frequency of [her] unpaid work to support a reasonable inference that [she] worked more than forty hours in a given week." *Id.* (internal citation and quotation marks omitted). Accordingly, the Court **DISMISSES** MacRory's second cause of action.

**C.    Meal and Rest Period Violation**

MacRory's third cause of action is entitled "Meal and Rest Period Violations." *See* FACC at 18. Under this cause of action, MacRory asserts that "Counter-Defendants routinely required [her] to work during her breaks without compensation." *Id.* at ¶ 70.

MacRory fails to identify any statute or case law supporting her entitlement to recover for meal and rest period violations. The FLSA "does not require employers to provide meal or rest periods and the fact that an employer may require an employee to work through a break period does not state a claim under the FLSA so long as the

employer properly compensated the employee for that work." *See Gomez v. Mi Cocina Ltd*, No. 3:14-CV-2934-P, 2015 U.S. Dist. LEXIS 196010, at *6 (N.D. Tex. Dec. 16, 2015) (internal citation and quotation marks omitted); *see also id.* at *7 ("[T]hey are not entitled to additional compensation for breaks not taken.").

Moreover, despite stating generally that "Texas state law abides by federal law," FACC at ¶ 69, MacRory does not identify any Texas law providing a separate, independent cause of action for meal and rest period claims. Seemingly recognizing this, MacRory does not oppose Counter-Defendants' motion on this basis. In her opposition, she makes no reference to, or discussion of, her meal and rest period violation claim. Therefore, MacRory does not adequately plead that she can recover separately for an alleged violation of her meal and rest breaks. To the extent MacRory claims she was not properly compensated for the time she worked during her breaks, this is encompassed within her minimum wage and overtime claims. Accordingly, the Court **GRANTS** Counter-Defendants' motion and **DISMISSES** MacRory's third cause of action.

**D.    Failure to Furnish Wage Statements**

Pursuant to her fourth cause of action, MacRory asserts that Precision failed to furnish her wage statements in violation of Texas law. Counter-Defendants argue that because the Texas Labor Code does not apply to employees covered by the FLSA, MacRory cannot recover under Texas law. *See* Doc. No. 17-1 at 11. As explained above, MacRory is entitled to plead claims arising under both the FLSA and Texas law.

That said, Texas law does not provide MacRory a remedy for Precision's alleged "failure to provide accurate itemized wage statements reflecting, among other things, accurate gross wages earned, accurate method of computation for net wages paid to MacRory and applicable employment tax deductions as required by Texas Labor Code § 64.001-64.003." FACC at ¶ 77. It is true that Texas Labor Code § 62.003 mandates that employers to furnish written earnings statements at the end of each pay period. *See* Tex. Lab. Code § 62.003(a). But MacRory incorrectly asserts that Texas Labor Code

§ 64.003 provides a remedy.  Nothing in Chapter 64 of the Texas Labor Code refers to the earnings statement requirement.  Texas Labor Code § 64.003 provides, in its entirety,

> (a) A holder who under Section 64.002 presents an employer's evidence of indebtedness and demands redemption is entitled, if the person using the employer's evidence of indebtedness refuses redemption, to recover from that person:
>
> > (1) the value of the employer's evidence of indebtedness;
> >
> > (2) a penalty in an amount equal to 25 percent of the amount due; and
> >
> > (3) costs of court and reasonable attorney's fees.
>
> (b) The holder may bring an action under Subsection (a) in the holder's own name.

Tex. Lab. Code § 64.003.

Counter-Defendants aptly argue that "under Texas law, there are no remedies for a wage statement violation."  Doc. No. 17-1 at 11.  In opposition, MacRory merely requotes section 64.003.[2]  *See* Doc. No. 22 at 12.  Section 64.003 plainly does not provide MacRory a private right of action to recover if Precision violated section 62.003 of the Texas Labor Code.  And a review of the case law interpretating section 62.003 reveals no cases wherein an employee has held her employer civilly liable for a such a violation.  Accordingly, MacRory does not plead a claim upon which relief can be granted.  The Court therefore **GRANTS** Counter-Defendants' motion and **DISMISSES** MacRory's fourth cause of action.

---

[2] In opposition, MacRory cites to Tex. Lab. Code § 64.403(1).  *See* Doc. No. 22 at 12.  There is no section 64.403 of the Texas Labor Code.  Nonetheless, this appears to be a typographical error.

**E.     Breach of Implied Covenant of Good Faith and Fair Dealing**

MacRory's fifth and six causes of action are for Counter-Defendants' alleged breaches of the implied covenant of good faith and fair dealing.  Under California law, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 683 (Cal. 1988) (internal quotation marks omitted).  "The implied covenant of good faith and fair dealing is that neither party will do anything that will injure the right of the other to receive the benefits of the agreement." *Openshaw v. FedEx Ground Package Sys.*, 576 F. App'x 685, 687 (9th Cir. 2014) (citing *Waller v. Truck Ins. Exch.*, 11 Cal. 4th 1, 36 (Cal. 1995)).  "The covenant 'cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement.'" *Openshaw*, 576 F. App'x at 687 (quoting *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349-50 (Cal. 2000)).

> In California, the factual elements necessary to establish a breach of the covenant of good faith and fair dealing are: (1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct.

*Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010).

As to the first element, Precision attached a July 25, 2017 employment contract to its complaint.  *See* Doc. No. 1 at 19–26 (the "Contract").  According to MacRory, "there exists no other agreements (i.e., when MacRory was hired on a full-time, salaried basis or when she was promoted to territory manager)."  Doc. No. 22 at 14.  MacRory adequately incorporates the Contract by reference in the FACC.  *See* FACC at ¶ 89.  Therefore, she sufficiently pleads the first element.  Second, MacRory adequately alleges that she fulfilled her obligations under the Contract.  Specifically, she says that she "never had refused to conduct her job duties," *id.* at ¶ 87, "was always dedicated and worked hard,"

-11-

*id.* at ¶ 88, "was able to collect 300 specimens a month consistently," *id.* at ¶ 88, and "did all or substantially all of the significant things that the contract with Precision required her to do," *id.* at ¶ 102.  Third, there are apparently no conditions precedent.

Turning to the fourth element, the Court addresses the fifth and sixth causes of action separately.  As to the fifth cause of action, MacRory asserts that Precision and Simoni:

> engaged in bad-faith conduct that frustrated Macrory's rights to the benefits of her employment contract including, but not limited to, misleading Macrory as to how many specimens per 3 months she had to collect in order to obtain full-time status; unnecessarily hiring new employees just to "keep an eye on shady Laura [Ms. Macrory," which intimidated Macrory and negatively affected Ms. Macrory's profits in Houston territory due to the new employees' presence and incompetence; trying to take away Ms. Macrory;s control of the Techs in her offices; drastically cutting her Techs' hours; endangering Ms. Macrory's health by asking her to regularly visit hospitals despite COVID-19 pandemic; and finally pressuring and fraudulently inducing Ms. Macrory to obtain patients' medical records for Precision's audits, which is a HIPPA violation.

*Id.* at ¶ 89.  She further claims that these actions prevented her from "receiving the benefits under the Agreement, including bonuses, sales and commissions."  *Id.* at ¶ 92.

These allegations are sufficient to surpass Rule 12(b)(6) scrutiny.  Heightened specificity is not required under the Federal Rules.  *See Land O'Lakes, Inc. v. DairyAmerica, Inc.*, No. 1:15-cv-01937-DAD-MJS, 2017 U.S. Dist. LEXIS 16501, at *21 (E.D. Cal. Feb. 6, 2017) ("While defendants contend that 'a plaintiff must allege with specificity what provision of the contract the defendant breached,' such specificity is not required under federal pleading standards.").  MacRory plausibly pleads that Counter-Defendants' actions, listed above, frustrated her entitlement to bonuses, sales, and commissions due under the Contract.  She further claims she was harmed by this.  *See* FACC at ¶ 95.  These allegations give Counter-Defendants fair notice of the basis of MacRory's claim and are thus sufficient to support a cognizable breach of the implied

covenant of good faith and fair dealing claim.  Accordingly, the Court **DENIES** Counter-Defendants' motion to dismiss MacRory's fifth cause of action.

As to her sixth cause of action, MacRory asserts that Counter-Defendants "sent an email about Ms. MacRory's resignation and alleged violation of the employment agreement along with their federal Complaint against MacRory; they made a statement to all the employees of Precision, regarding their attack on MacRory." *Id.* at ¶ 26. MacRory further alleges that "Precision's employees reasonably understood the email and the attached Complaint to (falsely) signify that MacRory breached the employment contract, engaged in unfair competition, solicited Precision's employees and clients for her alleged new employer and Precision's competitor, and cost Precision about $500,000 in losses and damages." *Id.*  According to MacRory, these actions "prevented [her] from receiving the benefits under the contract." *Id.* at ¶ 27.

This is insufficient to survive a motion to dismiss.  MacRory fails to identify any benefit she was entitled to under the Contract, nonetheless that the alleged email frustrated her entitlement to it.  The Court is dubious that actions taken *after* MacRory's resignation could frustrate her benefits under the Contract.  For these alleged actions to form the basis of a breach of the implied covenant of good faith and fair dealing claim, MacRory must plead what benefits she was entitled to after her resignation.  Accordingly, the Court **GRANTS** Counter-Defendants' motion and **DISMISSES** MacRory's sixth causes of action.

**F.   Hostile Work Environment**

MacRory's seventh cause of action is against Counter-Defendants for hostile work environment.  In support of her claim, MacRory cites to Texas Labor Code § 21.051. That section provides:

> An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:

-13-

20-cv-2101-MMA (KSC)

(1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or

(2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.

Tex. Lab. Code § 21.051.

Section 21 of the Texas Labor Code was enacted pursuant to the Texas Commission on Human Rights Act ("TCHRA") to prohibit sex and age discrimination and retaliation by employers. *See Donna Indep. Sch. Dist. v. Castillo*, No. 13-19-00395-CV, 2020 Tex. App. LEXIS 6404, at *7 (Tex. App. Aug. 13, 2020).

[T]he TCHRA provides that certain administrative steps are required before pursuing judicial remedies. *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 488 (Tex. 1991). Among these is filing a complaint with the TWC. Afterwards, a judicial complaint may be filed only after the TWC either dismisses the administrative complaint or the TWC fails to resolve the complaint within 180 days. *Jones v. Grinnell Corp.*, 235 F.3d 972, 975 (5th Cir. 2001).

*Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 169 (5th Cir. 2014); *see also Castillo*, 2020 Tex. App. LEXIS 6404, at *10 n.4 (internal citations omitted) ("[t]o exhaust administrative remedies under the TCHRA. a claimant must also: (1) allow the TWC 180 days to dismiss or resolve the complaint . . . ."). Therefore, pursuant to the TCHRA, a plaintiff must exhaust her state administrative remedies and request a right to sue letter from the Texas Commission on Human Rights before filing a civil action. *See Jones v. Grinnell Corp.*, 235 F.3d 972, 975 (5th Cir. 2001).

Counter-Defendants argue that MacRory has not obtained a right to sue letter and therefore has failed to exhaust her administrative remedies. In opposition, MacRory explains that she has "cured the requirement" and attached "an application for a 'right to sue' letter." Doc. No. 22 at 15.

1    MacRory is mistaken that she has cured this defect.  Her attachment is a complaint

2  to the Texas Workforce Commission Civil Rights Division.  This is not a right to sue

3  letter, nor does it inherently establish that she is yet entitled to one.  It appears instead

4  that MacRory has just begun pursuing her state administrative remedies.  Therefore, they

5  are not exhausted.

6    MacRory is correct that "the failure to receive a Texas right to sue letter is not a

7  jurisdictional defect," *Gorman*, 753 F.3d at 170, and therefore can be cured.  Once

8  MacRory obtains a right to sue letter she may seek leave to re-plead this claim within

9  sixty days.  *See* Tex. Lab. Code § 21.254.  But as of now, her claim is not ripe.

10  Accordingly, the Court **GRANTS** Counter-Defendants motion and **DIMISSES**

11  MacRory's seventh cause of action.

12  **G.    Constructive Termination**

13    MacRory's eighth cause of action is for constructive termination pursuant to Texas

14  law.  *See* FACC at 31.  Counter-Defendants assert that constructive termination is not an

15  independent cause of action.  *See* Doc. No. 17-1 at 17.  And they appear to be correct.

16  Under Texas law, "[c]onstructive discharge is not a freestanding cause of action; instead,

17  this concept permits an employee who has quit to demonstrate the required 'adverse

18  employment action' necessary for a statutory retaliation claim under section 21.055."

19  *Microsoft Corp. v. Mercieca*, 502 S.W.3d 291, 312 (Tex. App. 2016).  Similarly, under

20  federal law, constructive discharge appears to be an alternative method of establishing

21  that a plaintiff was "discharged"—an element of a discrimination claim.  *See Brown v.*

22  *Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000) (explaining that "[w]hen an employee

23  resigns, he may satisfy the discharge requirement by proving constructive discharge" in

24  the context of a Title VII discrimination claim).

25    In opposition, MacRory does not argue that constructive termination may be

26  pleaded as an independent cause of action.  Instead, she merely reiterates the factors

27  identified by the Fifth Circuit in *Brown*.  *See* Doc. No. 22 at 17.  As noted, *Brown*

28  discusses constructive termination in the context of a Title VII discrimination claim, not

-15-

as an independent cause of action.  Therefore, MacRory does not state a cognizable claim under Texas or federal law for constructive termination.[3]  Accordingly, the Court **GRANTS** Counter-Defendants' motion and **DISMISSES** MacRory's eighth cause of action.

**H.    Unsafe Work Conditions**

MacRory's ninth cause of action is against Counter-Defendants pursuant to Texas Labor Code § 451.001 for allegedly unsafe work conditions.  MacRory asserts that section 451.001 prohibits discrimination if an employee "has made a complaint about unsafe working conditions . . . ."  FACC at ¶ 121.  Section 451.001, however, provides:

A person may not discharge or in any other manner discriminate against an employee because the employee has:

(1) filed a workers' compensation claim in good faith;

(2) hired a lawyer to represent the employee in a claim;

(3) instituted or caused to be instituted in good faith a proceeding under Subtitle A; or

(4) testified or is about to testify in a proceeding under Subtitle A.

Tex. Lab. Code § 451.001.

MacRory's only factual basis for this claim is that she complained to Counter-Defendants that visiting hospitals during the COVID-19 pandemic created an "unreasonable risk of harm."  *See* FACC at ¶¶ 121, 124.  But as noted, a mere verbal complaint is insufficient under the statute.  As Counter-Defendants argue, the FACC is devoid of any information that MacRory has filed a workers' compensation claim,

---

[3] In the FACC, MacRory cites to Texas Labor Code § 21.051.  *See* FACC at ¶ 115.  To the extent MacRory wishes to bring a claim for discrimination under Texas Labor Code § 21.051, she may plead that any allegedly "unlawful employment practice" was based on her "race, color, disability, religion, sex, national origin, or age."  Tex. Lab. Code § 21.051.

initiated a proceeding, or otherwise retained counsel to represent her in bringing such a claim, as is required.  Nor does MacRory explain that she met one of these conditions.[4]  Accordingly, the Court **GRANTS** Counter-Defendants' motion and **DISMISSES** MacRory's ninth cause of action pursuant to Texas Labor Code § 451.001.

## I.   Retaliation

Tenth, MacRory's pleads a claim for retaliation under the FLSA or alternatively, Texas law.  The Court reiterates that alternative pleading is permissible at this stage.

### 1.   FLSA Retaliation Claim

The FLSA makes it unlawful for any person:

> to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act [29 USCS §§ 201 et seq., generally; for full classification, consult USCS Tables volumes], or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

29 USCS § 215(a)(3).  In the Ninth Circuit, to adequately plead a retaliation claim under the FLSA, MacRory must assert that: (1) she was engaged in "an activity protected under federal law;" (2) Counter-Defendants "subjected [her] to an adverse employment action;" and (3) the protected activity was a "motivating reason" for the adverse action.  *Acosta v. Zhao Zeng Hong*, 704 F. App'x 661, 664 (9th Cir. 2017) (quoting *Avila v. L.A. Police Dep't*, 758 F.3d 1096, 1109 (9th Cir. 2014)).

Regarding the first element, "in order to find protection under § 215(a)(3), an employee must actually communicate a complaint to the employer."  *Lambert v. Ackerley*, 180 F.3d 997, 1007 (9th Cir. 1999).  "[L]ess formal and detailed

---

[4] In opposition, MacRory asserts that Texas Labor Code § 411.103 provides the basis for her ninth cause of action.  *See* Doc. No. 22 at 19.  MacRory did not plead this claim.  Therefore, the court will not address her arguments that she has adequately pleaded an unsafe work conditions under that section.

communications also fit the statutory definition.  *Id.*  MacRory asserts that she complained to Counter-Defendants about the alleged FLSA violations.  *See* FACC at ¶ 132.  Thus, she adequately pleads that she engaged in a protected activity.  Next, MacRory sufficiently alleges adverse employment actions, including:

> unnecessarily hiring new employees just to "keep an eye on shady Laura [Ms. Macrory]," which intimidated Macrory and negatively affected Macrory's profits in Houston territory due to the new employees' presence and incompetence; trying to take away Macrory's control of the Techs in her offices; drastically cutting her Techs' hours; and endangering Macrory's health by asking her to regularly visit hospitals despite COVID-19 pandemic.

*Id.*  And finally, MacRory claims that these actions were taken "after" she made her complaints.[5]  While the Court agrees with Counter-Defendants that this allegation is bare, it plausibly suggests that her complaints were the motivating factor for the alleged adverse employment actions.  *See Pac. Shores Props., Ltd. Liab. Co. v. City of Newport Beach*, 730 F.3d 1142, 1168 (9th Cir. 2013) ("Causation is an intensely factual question that should typically be resolved by a jury.").  Accordingly, the Court **DENIES** Counter-Defendants' motion to dismiss MacRory's FLSA retaliation claim.

## 2.    Texas Retaliation Claim

As an initial matter, MacRory cites to the wrong statute in support of her claim. *See* FACC at ¶ 130 (citing "Texas Labor Code § 21.005(1)-(4)").  Because MacRory is represented by counsel, the Court has no duty to interpret the FACC liberally.  *Cf. Brown v. Dep't of Pub. Safety*, 446 F. App'x 70, 73 (9th Cir. 2011).  Nonetheless, the Court believes this was a typographical error and has determined that the proper statute governing unlawful retaliation is Texas Labor Code § 21.055.  Section 21.055 prohibits retaliation by an employer against an employee who has opposed a discriminatory

---

[5] MacRory did not plead the additional details—further suggesting causation—contained in her opposition, *see* Doc. No. 22 at 20–21, so the Court will not address them.

20-cv-2101-MMA (KSC)

practice, made or filed a charge, filed a complaint, or testified, assisted, or participated in any manner in an investigation, proceeding, or hearing.  *See* Tex. Lab. Code § 21.055.  As explained above, section 21 of the Texas Labor Code has statutory prerequisites prior to pursuing judicial remedies, which MacRory has not met.  Accordingly, the Court **GRANTS** Counter-Defendants' motion and **DISMISSES** MacRory's retaliation claim under Texas law.  Once MacRory obtains a right to sue letter, she may seek leave to re-plead this cause of action within sixty days.  *See* Tex. Lab. Code § 21.254.

**J.    Unjust Enrichment**

MacRory's eleventh cause of action is for unjust enrichment.  In Texas, "[a] party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage."  *Heldenfels Bros., Inc. v. Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

According to MacRory, "Counter-Defendants retained $17,280 in Ms. MacRory's unpaid overtime wages, in addition to all the missed meal and rest breaks that Ms. MacRory had to sacrifice in order to 'better' the company."  FACC at ¶ 139.  Counter-Defendants argue that because this claim is based on the alleged wage and overtime violations, it is preempted by the FLSA.  *See* Doc. No. 17-1 at 12.

Courts considering the interplay between the FLSA and a Texas state law cause of action for unjust enrichment have repeatedly noted that "[i]t is well-settled that the FLSA's statutory causes of action are the sole remedies available to a worker for enforcement of rights he or she may have under the FLSA."  *Zorilla v. Uber Techs., Inc.*, No. 4:16-CV-615, 2018 U.S. Dist. LEXIS 232926, at *6-7 (S.D. Tex. Mar. 15, 2018); *see also Botello v. COI Telecom, LLC*, No. 10-cv-305, 2010 U.S. Dist. LEXIS 99790, at *12 (W.D. Tex. Sept. 21, 2010) (holding that the plaintiff's claim for unjust enrichment was preempted by the FLSA where the claim was predicated on an alleged violation of the FLSA); *Guerrero v. JPMorgan Chase & Co.*, No. 6:09-cv-388, 2010 U.S. Dist. LEXIS 9908, at *1–2 (E.D. Tex. Feb. 5, 2010) (holding that the plaintiffs' FLSA-based quantum meruit, unjust enrichment, and breach of contract claims were precluded by conflict

-19-

preemption).  Accordingly, these courts have dismissed unjust enrichment claims when they are predicated on alleged FLSA violations.  *See, e.g.*, *Botello*, 2010 U.S. Dist. LEXIS 138572, at *3 n.1 ("The Court has previously granted Defendants' motion to dismiss Plaintiffs' unjust enrichment claim as it relates to any claim of failure to pay minimum wages or overtime under the FLSA.").

All of MacRory's factual allegations in the FACC supporting this claim are duplicative of her FLSA claims.[6]  *See* FACC at ¶¶ 139–40.  Therefore, the Court **GRANTS** the motion and **DISMISSES** MacRory's eleventh cause of action.

## K.   Undue Influence

Pursuant to her twelfth cause of action, MacRory brings a claim against Counter-Defendants for undue influence.  According to MacRory,

> Under Texas law, the elements of undue influence are:(1) the existence and exertion of an influence; (2) the effective operation of such influence so as to subvert or overpower the mind of the property owner at the time the instrument was executed; and (3) the execution of an instrument that the property owner would not have executed but for such influence. See Rothermel v. Duncan, 369 S.W.2d 917, 922 (Tex.1963); Fielding v. Tullos, No. 09-17-00203-CV, 2018 WL 4138971, at *7 (Tex. App.—Beaumont Aug. 20, 2018, no pet.).

*Id.* at ¶ 145.  Undue influence, however, is not a cognizable independent cause of action under Texas law.  The two Texas cases MacRory cites demonstrate that undue influence is merely a basis to undermine capacity and avoid enforcement of a contract or will. Apparently, MacRory does not disagree.  Counter-Defendants seek dismissal of this claim on this basis, *see* Doc. No. 17-1 at 20, and MacRory does not oppose.  There is no

---

[6] In opposition, MacRory adds that Precision never paid McRory a $9,000 bonus she was "awarded," and owes her $5,000 in unpaid commissions.  *See* Doc. No. 22 at 13.  These new allegations may be independent of the alleged FLSA violations.  However, MacRory did not plead them and therefore the Court does not consider them.  To the extent that MacRory has an alternative basis—*i.e.*, factual allegations that are not duplicative of the FLSA claims—she may be permitted to amend this cause of action.

will and the only instrument MacRory identifies is the Contract, which she does not plead is invalid.  The allegation that "Counter-Defendants took advantage of MacRory's trust and unduly influenced her to commit HPPA violations," FACC at ¶ 147, is insufficient to plead that the Contract, or any other instrument not duly pleaded, is unenforceable. Accordingly, the Court **GRANTS** Counter-Defendants' motion and **DIMISSES** MacRory's twelfth cause of action.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Counter-Defendants' motion to dismiss.  The Court **DIMISSES** MacRory's first (TMWA claim), second, third, fourth, sixth, seventh, eighth, ninth, tenth (Texas retaliation claim), eleventh, and twelfth causes of action.  MacRory may file a Second Amended Counter Complaint on or before **May 24, 2021**.  Counter-Defendants must then respond within the time prescribed by Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED**.

Dated: April 26, 2021

HON. MICHAEL M. ANELLO
United States District Judge